UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

   NICOLE CAMPBELL, as Seller Representative,

                Plaintiff/Counter Defendant,      <u>OPINION AND ORDER</u>

v.

                                             7:19-cv-3017 (PMH)

   PLANT HEALTH INTERMEDIATE, INC.,

                Defendant/Counter Claimant.
------------------------------------------------------------X

PHILIP M. HALPERN, United States District Judge:

Plaintiff Nicole Campbell, as the "Seller Representative" ("Plaintiff"), in this diversity action, brings two claims for relief against Defendant Plant Health Intermediate, Inc. ("PHI") asserting that PHI breached a contract by failing to perform obligations contained in an equity purchase agreement dated October 19, 2018 (the "Equity Purchase Agreement"). Specifically, Plaintiff alleges that PHI failed to make a post-closing earn-out payment in accordance with the Equity Purchase Agreement and that Plaintiff is entitled to attorney's fees for having to enforce its rights under the Equity Purchase Agreement. PHI answered Plaintiff's Complaint and asserted counterclaims against Plaintiff and purported to assert "crossclaims" against non-parties Clare Reinbergen ("Reinbergen") and Rupert Campbell ("R. Campbell"). PHI asserts five counterclaims (Counterclaims I–IV, VII) and six "crossclaims" ("Crossclaims" I–VI) including: breach of contract (Counterclaim I), breach of the implied covenant of good faith and fair dealing (Counterclaim II), fraud and fraudulent concealment (Counterclaim III), unjust enrichment (Counterclaims IV and V), money had and received (Counterclaim VI), and attorney's fees (Counterclaim VII).

Before the Court is Plaintiff's partial motion to dismiss three of PHI's counterclaims and all "crossclaims." Plaintiff moves to dismiss Counterclaims II, III, and IV pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 9(b). Plaintiff also moves to dismiss all "crossclaims" against non-parties Reinbergen and R. Campbell pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 13(g) because Plaintiff asserts that these parties have not been properly joined as parties to the litigation.

For the reasons set forth below, Plaintiff's partial motion to dismiss is GRANTED.

## <u>BACKGROUND</u>

On August 13, 2019, Plaintiff filed a First Amended Complaint asserting claims against PHI. (Doc. 34). On August 28, 2019, PHI answered Plaintiff's First Amended Complaint and asserted counterclaims against Plaintiff as well as "crossclaims" against non-parties Reinbergen and R. Campbell. (Doc. 36, "Answer"). The facts recited below are taken from PHI's Answer asserting counterclaims and "crossclaims."

On October 19, 2018,[1] PHI purchased from Plaintiff, R. Campbell, and Reinbergen (collectively the "GP Sellers")[2] all of the issued and outstanding stock of Growth Products Ltd. ("Growth Products") and all membership interests in GP Solutions, LLC ("GP Solutions" and collectively the "GP Entities"). *Id.* ¶ 52. The shares were purchased pursuant to the Equity Purchase Agreement. *Id.* Growth Products produced, marketed, and sold a variety of products used on agricultural crops to treat biological fungicides including the Companion Biological Fungicide wettable powder and the Companion Liquid Biological Fungicide (collectively the "Companion Products"). *Id.* ¶ 62–63. PHI alleges that the Companion Products can only be used

---

[1] The Answer apparently and incorrectly listed the purchase date as October 19, 2019. *See id.* ¶ 52.
[2] Randy Oberlander was also alleged to be involved in the sale and purchase of the GP Entities, *id.* ¶ 52, but no claims are made against Mr. Oberlander and therefore Mr. Oberlander is not considered in this Opinion and Order.

in accordance with their Environmental Protection Agency ("EPA") registered labels, and that the Companion Products were a "primary reason" that PHI was interested in purchasing Growth Products. *Id.* ¶¶ 64–66.

The Equity Purchase Agreement included representations and warranties regarding Growth Products' business. PHI alleges that, after the closing took place pursuant to the terms of the Equity Purchase Agreement, PHI determined that the GP Sellers had concealed or misstated material facts regarding Growth Products' business. *Id.* ¶ 86. Specifically, PHI alleges that it uncovered emails that had been deleted which demonstrated that Growth Products was having an ongoing dialogue with the EPA regarding the registration and labeling of the Companion Products. *Id.* ¶ 87. According to PHI, in the winter and spring of 2016, the EPA received a complaint that Growth Products was "selling unregistered products with pesticidal claims." *Id.* ¶ 88. The EPA conducted an initial inspection of Growth Products on June 8, 2016, and, during the inspection, Reinbergen allegedly informed the EPA that Growth Products had put sales of the Companion Products on hold and would not be selling the Companion Products until Growth Products received a new label from the EPA. *Id.* ¶¶ 94–95. PHI alleges that, despite Reinbergen's statement, Growth Products continued selling the Companion Products. *Id.* ¶ 96. PHI asserts that the EPA continued investigating Growth Products, and, on April 12, 2018, the EPA issued an inspection report as part of its initial evaluation of Growth Products. *Id.* ¶ 105. PHI alleges that this inspection report was not disclosed to PHI. *Id.* PHI asserts that the EPA investigation is ongoing and that the EPA is in the process of determining the extent to which Growth Products complied with the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") between 2014 and 2018. *Id.* ¶ 106. PHI claims that the FIFRA investigation includes

over thirty products and that information related to the EPA investigation was not made known to PHI prior to PHI entering into the Equity Purchase Agreement. *Id.* ¶ 107.

Additionally, PHI alleges that GP Solutions improperly terminated its 401(k) plan and distributed the plan's assets after the sale of the GP Entities to PHI. *Id.* ¶¶ 108–11. PHI alleges that the 401(k) plan was supposed to be transferred into the Douglas Products and Packaging Company 401(k) plan after the sale. *Id.* ¶ 112. PHI claims that Plaintiff "was one of the primary beneficiaries of the premature termination of the GP [Solutions] 401(k) plan." *Id.* ¶ 114.

Finally, PHI alleges that after the sale of the GP Entities to PHI, PHI assumed the lease for several buildings that had been used by the GP Entities. *Id.* ¶ 115. PHI alleges that R. Campbell continued collecting cash rent payments from sub-tenants after the sale of the GP Entities to PHI. *Id.* ¶ 116. PHI claims that these payments should have been made to PHI and that R. Campbell has not tendered the sub-lease payments to PHI. *Id.* ¶ 118.

## **STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to consider dismissing an answer with counterclaims and crossclaims for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The

factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the answer with counterclaims and crossclaims], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

The Court, in connection with this motion to dismiss, will consider the terms of the Equity Purchase Agreement, (Doc. 59-2, the "Agreement"), because on a motion to dismiss, "the Court is entitled to consider facts alleged in the [answer asserting counterclaims and crossclaims] and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the [answer asserting counterclaims and crossclaims] and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit."). The Equity Purchase Agreement, which is annexed as an exhibit to PHI's motion to dismiss, is integral to the Answer asserting counterclaims and crossclaims and

both parties rely on the terms of the Equity Purchase Agreement in their pleadings and arguments.

## ANALYSIS

I.   "Crossclaims" Against Non-Parties

The Court will first address the portion of Plaintiff's motion which seeks dismissal of all claims ("Crossclaims" I–VI) against non-parties, Reinbergen and R. Campbell pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 13(g). For the reasons set forth below, the Court dismisses all "crossclaims" against Reinbergen and R. Campbell.

Fed. R. Civ. P. 13(g) provides that "[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim." Fed. R. Civ. P. 13(g). A coparty is any party that "is neither a non-party nor a party it formally opposes (*i.e.,* a party on the opposite side of the action)." *Luyster v. Textron, Inc.*, 266 F.R.D. 54, 57 (S.D.N.Y. 2010) (citing 6 Wright, Miller & Kane, Federal Practice & Procedure § 1431, at 233–35 (3d ed. 1998)).

Reinbergen and R. Campbell clearly are not co-parties to this action. In fact, Reinbergen and R. Campbell are not parties at all. While a defendant can join additional parties in accordance with Fed. R. Civ. P. 19 and 20 to enable the defendant to bring counterclaims or crossclaims against a party that was not a party to the original lawsuit, *see* Fed. R. Civ. P. 13(h), PHI did not add Reinbergen or R. Campbell as parties to this action prior to attempting to assert claims against them. Therefore, it is procedurally improper for PHI to bring "crossclaims" against these non-parties. *See Luyster*, 266 F.R.D. at 57 (finding that the definition of a coparty does not include non-parties).

PHI claims that "[b]ecause Plaintiff designated herself as a 'class representative,' PHI was left completely in the dark as to whether the remainder of [the GP Sellers] were actually parties to the action, and thus issued cross-claims to Clare Reinbergen and Rupert Campbell accordingly." (Doc. 65, "PHI Opp'n" at 21). However, the First Amended Complaint clearly states that the lawsuit was initiated by "Nicole Campbell, as Seller Representative" and the Equity Purchase Agreement provides that "[e]ach Seller hereby irrevocably appoints the Seller Representative as the agent for each such Seller with full power of attorney to act for and on behalf of such Seller in any capacity in connection with this Agreement." Agreement § 9.10. Therefore, it is clear that Reinbergen and R. Campbell were not parties to the original lawsuit and the Court finds no merit in PHI's argument that it could not have known whether Reinbergen or R. Campbell were parties to this litigation prior to attempting to assert "crossclaims" against them. Accordingly, all "crossclaims" against Reinbergen and R. Campbell are dismissed because PHI cannot assert "crossclaims" against non-parties.[3]

II.   Counterclaims Against Plaintiff

Plaintiff moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 9(b), PHI's counterclaims alleging (1) a breach of the implied covenant of good faith and fair dealing (Counterclaim II), (2) fraud and fraudulent concealment (Counterclaim III), and (3) unjust enrichment (Counterclaim IV). The Court will address seriatim these three counterclaims.

a.   Breach of the Implied Covenant of Good Faith and Fair Dealing (Counterclaim II)

PHI alleges in Counterclaim II that Plaintiff has "breached the covenant of good faith and fair dealing by misrepresenting or misrepresenting by omission GP Entities records, accounts,

---

[3] The Court does not reach the question of whether any claims could survive against Reinbergen and R. Campbell if they had been properly joined because all claims against these non-parties are dismissed as procedurally defective; but certainly, the same rules as discussed herein as to the counterclaims asserted against Plaintiff would be applicable to any claims asserted against the non-parties.

registrations and Benefit Plans and thereby destroying the benefits that were to be conferred by the *Equity Purchase Agreement.*" Answer ¶ 130. Plaintiff argues that Counterclaim II is duplicative of Counterclaim I, which asserts breaches of the Equity Purchase Agreement. (Doc. 60, "Pl. Mem." at 11). Because PHI has failed to identify an implied contractual provision allegedly breached, as is required to state a claim for a breach of the implied covenant, and as explained below, Counterclaim II must be dismissed.

The threshold question that the Court must first address is what law to apply to determine whether PHI can bring both a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff argues that the Equity Purchase Agreement provides the answer to this question and that Delaware law should apply. *See id.* The Equity Purchase Agreement provides, in relevant part, "[a]ll matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule . . . ." Agreement § 9.08. While PHI does not clearly articulate which state's law it believes should apply to its implied covenant claim, PHI cites to cases applying both Delaware law and New York law to support its argument that counterclaims I and II should both proceed past the pleading juncture. PHI Opp'n at 10–14. Because the implied covenant claim for relief is a contract claim, and therefore does arise out of or relate to the Equity Purchase Agreement, the Court finds that the choice of law clause in the Equity Purchase Agreement controls and that Delaware law applies to determine whether PHI has stated a claim for breach of the implied covenant of good faith and fair dealing. *See Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).

The implied covenant of good faith and fair dealing, under Delaware law, is "best understood as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions." *Dunlap*, 878 A.2d at 441 (internal citations and quotations omitted). However, the implied covenant of good faith and fair dealing "cannot be used to circumvent the parties' bargain" and does not "create a free-floating duty . . . unattached to the underlying legal document." *Id.* (internal citations omitted). Under Delaware law, to state a claim for breach of the implied covenant a plaintiff "must allege a specific implied contractual obligation [unrelated to the express contract provisions], a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) (quoting *Fitzgerald v. Cantor,* No. CV 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)). A plaintiff cannot rely on "general allegations of bad faith conduct," but rather "must allege a specific implied contractual obligation [unrelated to the express contract provisions] and allege how the violation of that obligation denied the plaintiff the fruits of the contract." *Id.* The implied covenant is "rarely invoked successfully." *Id.* (citing *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.,* No. CV 1668-N, 2006 WL 2521426, at *6 (Del.Ch. Aug.25, 2006)). Quite clearly, "a breach of the implied covenant claim cannot be based on conduct that the contract expressly addresses." *Khushaim v. Tullow Inc.*, No. CV N15C-11-212, 2016 WL 3594752, at *4 (Del. Super. Ct. June 27, 2016).

PHI does not identify any specific implied provision allegedly breached by the GP Sellers. Rather, PHI's implied covenant claim is premised on breaches of the express contractual provisions of the Equity Purchase Agreement. *See* Answer ¶ 128 ("The Counterclaim Defendants have committed numerous breaches of the *Equity Purchase Agreement,* including, by way of

example, §§ 3.07, 3.08, 3.15, 3.16, 3.17, 3.20, 3.23, 4.04 and 6.03"); *id.* ¶ 129 ("The express terms of the *Equity Purchase Agreement* . . . placed upon the Counterclaim Defendants the duties to engage in good faith and fair dealing"). PHI has failed to identify an implied term allegedly breached as is required to state a claim for a breach of the implied covenant of good faith and fair dealing and to survive a motion to dismiss.

PHI makes a belated attempt in its opposition brief to identify an implied term allegedly breached. *See* PHI Opp'n at 14 (arguing that "ongoing employment responsibilities; custodial duties of property, employees, and business; and ongoing responsibilities to run Growth Products in an honest and truthful manner for the benefit of PHI were not explicit terms expressly drafted or consummated into the Purchase Agreement" and which were allegedly breached). These are argumentative afterthoughts set forth in a brief and not allegations contained in the operative pleading. PHI does not, in Counterclaim II, identify or specify these implied terms or any other implied terms which were allegedly breached; and it is not at all clear whether under Delaware law any of these generic thoughts set forth in its brief would survive a motion to dismiss. Accordingly, "merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing." *Khushaim*, 2016 WL 3594752, at *4 (quoting *Haney v. Blackhawk Network Holdings, Inc.,* CV No. 10851 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016)). Because PHI relies exclusively on breaches of express provisions of the Equity Purchase Agreement in Counterclaim II, the Court finds that Counterclaim II is defective as a matter of law and will be dismissed.

PHI's also argues that the Court should permit both its breach of contract and its breach of the implied covenant claims to proceed past the pleading stage because "the alternative

pleading standards of Fed. R. Civ. P. 8" permit PHI to bring both claims. *See* PHI Opp'n at 10–11. PHI relies heavily on two cases in support of this proposition, both of which are distinguishable from the case at bar. First, in *Philip A. Templeton, M.D., P.A. v. EmCare, Inc.*, the Court permitted Defendants' breach of contract counterclaim and implied covenant counterclaim to survive Plaintiff's motion to dismiss because "[d]efendant allege[d] that plaintiff took advantage of oral extensions" of the contract. *See* 868 F. Supp. 2d 333, 340 (D. Del. 2012). Therefore, in *EmCare*, the breach of the implied covenant claim was premised on separate and distinct oral statements that were not embodied within the operative contract. Conversely, here, the implied covenant counterclaim is based on the same conduct that forms the basis of the breach of contract claim and no other extraneous oral statements or representations are at issue. In *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, the court also permitted both a breach of contract claim and a breach of the implied covenant claim to survive a motion to dismiss because "where the existence or meaning of a contract is in doubt, a party may plead a claim for breach of the covenant of good faith and fair dealing in the alternative." 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (citing *Fantozzi v. Axsys Techs., Inc.*, No. 07-CV-2667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008)). As discussed in this opinion and order *infra*, the existence of a contract here is not in dispute. This is not a situation in which PHI's first and second counterclaims are pled in the alternative pursuant to Fed. R. Civ. P. 8. Conversely, Counterclaim II is completely subsumed by Counterclaim I since Counterclaim II is based on the same breaches asserted in Counterclaim I. PHI has not pled alternative theories of recovery for breach of contract, but rather pled duplicative theories of recovery, which is prohibited by Delaware law given the facts alleged and at issue herein. PHI's alternative pleading theory is simply unavailing.

b.  Fraud and Fraudulent Concealment (Counterclaim III)

PHI asserts, in Counterclaim III, a claim for fraud and fraudulent concealment and alleges that the GP Sellers intentionally made false or untrue representations or omissions of material fact to PHI and on which PHI relied in entering into the Equity Purchase Agreement. *See* Answer ¶¶ 140–43. Again, the threshold question the Court must address is what law to apply to determine whether Counterclaim III survives Plaintiff's motion to dismiss.

PHI relies extensively on New York law to support its argument that PHI's "fraud and contract claims [can] both reach the trier of fact because [the GP Sellers'] statements and omissions induced PHI to enter in the Agreement, and because [the GP Sellers'] representations and warranties in the Agreement constitute misrepresentations of present fact." PHI Opp'n at 7. As with Counterclaim II, Plaintiff argues that, pursuant to the choice of law clause in the Equity Purchase Agreement, Delaware law applies to determine whether PHI can plead a counterclaim for fraud and fraudulent concealment. (Doc. 66, "Reply" at 3).

The Court finds that Counterclaim III "relat[es] to th[e] [Equity Purchase] Agreement," and, therefore, that the Equity Purchase Agreement's choice of law clause controls and that Delaware law applies to determine if Counterclaim III survives a motion to dismiss. *See* Agreement § 9.08. This finding is firmly in line with other courts in this District which have found that fraud claims are related to, and included in, similarly broad choice of law clauses. *See Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309–10 (2d Cir. 1994) ("[Plaintiff] agreed to be bound by a choice of law provision that covers any controversy 'arising out of or relating to' the [contract] . . . this language is sufficiently broad to cover tort claims as well as contract claims 'arising out of or relating to' the [contract]."); *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, No. 07-CV-9580, 2008 WL 4833001, at *6, *11 (S.D.N.Y. Nov. 5, 2008)

(holding that forum selection clause which provides that "[a]ny dispute that may arise or should be associated with this Agreement . . . covers [defendant's] counterclaim for fraud."); *see also TecFolks, LLC v. Claimtek Sys*., 906 F. Supp. 2d 173, 177 (E.D.N.Y. 2012) ("The  forum selection clause was broadly drafted to encompass 'any dispute . . . relating to or arising out of this contract.' Here, plaintiff's breach of contract claim arises out of the Contract while plaintiff's fraud in the inducement claim relates to the Contract."). Accordingly, the Equity Purchase Agreement's choice of law clause covers PHI's fraud claim and the Court applies Delaware law.

Simply put, PHI's fraud claim is precluded by the terms of the Equity Purchase Agreement and Delaware law. Indeed, "where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Hiller & Arban, LLC v. Reserves Mgmt., LLC*, No. CV N15C-02-161, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016) (quoting *ITW Glob. Invs. Inc. v. Am. Indus. P'rs Capital Fund IV, L.P.,* No. CV N14C–10–236, 2015 WL 3970908, at *6 (Del. Super. Ct. June 24, 2015)). In order to state a claim for breach of contract and a claim for fraud, "the fraud claim will survive only if premised 'on conduct that is separate and distinct from the conduct constituting breach.'" *Id.* (quoting *ITW Glob. Invs. Inc.*, 2015 WL 3970908, at *6).

Here, PHI's fraud claim is premised exclusively on conduct covered by the terms of the Equity Purchase Agreement and therefore is precluded by PHI's breach of contract claim and Delaware law. PHI points to seven allegedly false and untrue representations or omissions of material fact made by the GP Sellers to PHI regarding issues with the EPA including:

1. The permits and registrations that the GP Entities had obtained from Governmental Authorities were valid and in full force and effect

2. There had been no change, event or development that could reasonably be expected to materially [sic] adverse to the business

3. No event had occurred that was reasonably likely to constitute a violation or a failure by the GP Entities to comply with any legal requirement or permit or that could lead to the revolution [sic], suspension, cancellation, adverse effect on any permit

4. The GP Entities had been in material compliance with all Environmental Laws and they had not been in any material violation of such laws

5. There was no pending or threatened claims or restrictions on the GP Entities' business due to any Environmental Laws or Liabilities with respect to any product or asset

6. The GP Entities had not received any inquiry or request for information, notice, warning or other communications that relate to any alleged, actual or potential violation or failure to comply with any environmental law

7. No representation or warranty by the GP Entities and none of these statements in the Disclosure Schedules contained untrue statements or omitted to state a material fact

Answer ¶ 133. Each of these allegedly untrue statements is covered by a representation or warranty in the Equity Purchase Agreement. *See* Answer ¶ 133(1)[4] (alleged breach of Agreement § 3.15(b)); *id.* ¶ 133(2) (alleged breach of Agreement § 3.15(c)); *id.* ¶ 133(3) (alleged breach of Agreement § 3.16(d)); *id.* ¶ 133(4) (alleged breach of Agreement § 316(a)); *id.* ¶ 133(5) (alleged breach of Agreement § 316(b)); *id.* ¶ 133(6) (alleged breach of Agreement § 316(c)); *id.* ¶ 133(7) (alleged breach of Agreement ¶ 3.23).

PHI further alleges that the GP sellers made false and untrue representations and omissions of material fact regarding the GP Solutions benefit plan. *Id.* ¶ 137. That too (as with the other fraud theories alleged *supra*) is covered by the Equity Purchase Agreement. *See* Agreement § 3.17(d) ("No complete or partial termination of any Benefit plan has occurred or is expected to occur.").

The Equity Purchase Agreement also provides, in relevant part:

---

[4] The Court numbers the allegedly false and untrue representations or omissions of material fact referenced in Answer ¶ 133 for ease of reference.

**Section 3.23 Full Disclosure.** No representation or warranty by Company Group in this Agreement and no statement contained in the Disclosure Schedules to this Agreement or any certificate or other document furnished or to be furnished to Buyer pursuant to this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

**Section 8.13 Sole Remedy.** The Parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this ARTICLE VIII. In furtherance of the foregoing, each Party hereby waives, to the fullest extent permitted under Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other Party hereto and its Affiliates and its and their respective Representatives arising under or based upon any applicable laws, except pursuant to the indemnification provisions set forth in this ARTICLE VIII. Notwithstanding the foregoing, this Section 8.13 shall not limit any Party's right to seek and obtain any equitable relief to which such Party shall be entitled or to seek any remedy related to fraud.[5]

Agreement §§ 3.23, 8.13. Therefore, pursuant to the Equity Purchase Agreement, the sole remedy for "any and all claims for any breach of any representation [or] warranty . . . relating to the subject matter of [the Equity Purchase] Agreement" with limited exceptions not applicable herein, "shall be pursuant to the indemnification provisions set forth in this ARTICLE VIII." *Id.*

---

[5] The "fraud" referred to herein can only mean a fraud claim viable under Delaware state law; and as indicated separately in this Opinion and Order, none has been pled. Under a different set of facts, PHI's Answer may have revealed that PHI seeks rescission of the Equity Purchase Agreement. It is true that a party who alleges that they may have been induced to enter into a contract by the fraudulent misrepresentations of the other party may seek rescission of the contract and seek damages from the other party. *See Citigroup Glob. Markets, Inc. v. KLCC Investments, LLC*, No. 06-CV-5466, 2015 WL 5853916, at *9 (S.D.N.Y. Sept. 28, 2015), *aff'd*, 706 F. App'x 38 (2d Cir. 2017). Alternatively, however, if a party alleges that they were induced to enter into a contract by the fraudulent misrepresentations of the other party, the allegedly wronged party may "continue with the contract and accept[] its benefits thereby affirming it." *Id.* (quoting *Huntington Village Dental, PC v. Rathbauer*, 3 N.Y.S.3d 285, at *5 (N.Y. Sup.Ct. Suffolk Cty. 2014)). Here, PHI chose the latter course. PHI does not seek rescission of the Equity Purchase Agreement but does seek to recover damages for alleged breaches of the express provisions of the Equity Purchase Agreement. Because PHI simply does not allege that the Equity Purchase Agreement is void or voidable, the Court cannot permit PHI's tort claims to survive a 12(b)(6) motion to dismiss. This is not a case in which the alternative pleading standards of Fed. R. Civ. P. 8 permit PHI to plead its fraud claims in the alternative because, as stated *infra*, PHI's Answer makes clear that there is no factual dispute regarding the existence of a valid contract.

§ 8.13. Each of the seven allegedly untrue representations or omissions of material fact related to the GP Entities' alleged issues with the EPA as well as representations related to the GP Solutions 401(k) Plan are covered by express contract provisions in the Equity Purchase Agreement.

PHI argues, contrary to its pleading, that its fraud claim is premised on conduct that is separate and distinct from its breach of contract claim. Specifically, PHI argues that "the deletion of incriminating emails so that [PHI] could not determine and assess the facts before it decided to buy the businesses, and before it decided what to pay for those businesses do state a cause of action that can co-exist with [PHI's] contract claim." PHI Opp'n at 6-7. However, PHI simply does not allege such a set of facts, and all the identified allegedly false and untrue representations or omissions of material facts are covered by the express terms of the Equity Purchase Agreement. PHI has not premised its fraud claim on conduct that is separate and distinct from the underlying breach of contract claim, and therefore, PHI's fraud counterclaim must be dismissed.[6]

However, assuming *arguendo* that PHI did plead that the deletion of emails was conduct that formed the basis of its fraud claim, the Purchase Equity Agreement provides that PHI "conducted its own independent investigation, verification, review and analysis of the [GP Entities]" and that PHI "had a full opportunity to meet with the [GP] Sellers to discuss the

---

[6] Plaintiff also argues that a party seeking to pursue both a breach of contract claim and a fraud claim "must prove that the damages pled under each cause of action are distinct." Pl. Mem. at 14 (quoting *Hiller*, 2016 WL 3678544, at *4). PHI responds that because it seeks damages greater than the Equity Purchase Agreement's $2.05 million damages cap, the additional damages PHI seeks "must theoretically stem from [the GP Sellers'] fraud." PHI Opp'n at 15–16. PHI's argument has no merit. The Wherefore Clauses for Counterclaim I and Counterclaim III are nearly identical. *Compare* Answer at 23–24, *with id.* at 28. The Wherefore Clause for Counterclaim III even makes explicit reference to seeking damages under the Equity Purchase Agreement. *Id.* (specific to Counterclaim III, PHI seeks, *inter alia*, "attorney's fees and the costs of this action, provided for in § 8.01 of the *Equity Purchase Agreement*"). PHI's failure to seek separate damages for its breach of contract claim and fraud claim is an independent ground for dismissal. *See EZLinks Golf, LLC v. PCMS Datafit, Inc.*, No. CV No. N16C-07-080, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017).

business of the [GP Entities]." Agreement § 8.14. Therefore, even if PHI had pled that the deletion of emails was conduct on which its fraud allegation was premised, such an allegation would not permit PHI to pursue a separate fraud claim.

PHI also argues that it should be permitted to bring both a breach of contract claim and a fraud claim pursuant to Fed. R. Civ. P. 8 which provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). PHI asserts that the fraud claim is pled in the alternative to the breach of contract claim because the validity of the contract is in question. PHI Opp'n at 6. PHI is correct that courts may permit claims sounding in contract and tort to advance past the pleading juncture when the existence of a valid contract is in doubt. *See, e.g.*, *Cavi v. Evolving Sys., Inc.*, 245 F. Supp. 3d 604, 605 (D. Del. 2017) ("Delaware state courts generally allow [a party to plead both a contract claim and a quasi-contract claim] 'when there is doubt surrounding the enforceability or the existence of the contract.'" (quoting *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. CV 762-N, 2005 WL 2130607, at *8 (Del. Ch. Aug. 26, 2005)); *Esprit Health, LLC v. Univ. of Delaware*, No. 13-CV-01385, 2013 WL 6773571, at *2 (D. Del. Dec. 19, 2013) (permitting contract claim and fraud claim to survive 12(b)(6) motion to dismiss because "at the most basic level, while Plaintiff claims breach of contract, it is not an undisputed fact that there was a contract.").

Here, however, PHI's Answer demonstrates that the existence of a valid contract is not in dispute. *See, e.g.*, Answer ¶ 10 ("PHI admits that on October 19, 2018 the stockholders of Growth Products and the members of GPS entered into an agreement with PHI. PHI further states that the Purchase Agreement speaks for itself and . . . PHI refers to the Purchase Agreement in its entirety, for its content, meaning and effect"); *id.* ¶ 52 ("On October 19, 2019

[sic], PHI purchased . . . all of the issued and outstanding stock of Growth Products and all of the outstanding membership interests in GPS . . . . PHI purchased the Equity pursuant to the October 19, 2018 Equity Purchase Agreement."); *id.* ¶ 67 ("On October 19, 2018, Plaintiff and Counterclaim Defendants entered into an Equity Purchase Agreement"); *id.* ¶ 86 ("Following the consummation of the *Equity Purchase Agreement* . . . ."). Nowhere in PHI's Answer and assertion of counterclaims does PHI argue that no valid contract was formed between the GP Sellers and PHI. Furthermore, PHI raises sixteen affirmative defenses in its Answer, none of which assert that the existence of a valid contract is in doubt. Finally, the relief PHI seeks does not include rescission of the Equity Purchase Agreement. *See* Answer, Wherefore Cls. at 23–24, 25, 28, 29, 30, 31, 32.

Accordingly, the Court finds that Counterclaim III is precluded by the words of the Equity Purchase Agreement and the law applicable thereto. Counterclaim III is therefore dismissed.[7]

        c.   Unjust Enrichment (Counterclaim IV)

PHI's fourth counterclaim asserts unjust enrichment and alleges that "[i]t would be unjust and inequitable to allow the Counterclaim Defendants to retain the benefit of the inflated sale price of GP Entities and their salaries, bonuses, and other benefits that Plaintiff paid to the Counterclaim Defendants." Answer ¶ 152. Plaintiff argues that Counterclaim IV is duplicative of PHI's breach of contract claim and should be dismissed. *See* Pl. Mem. at 16. Similar to Counterclaim III, PHI argues that Counterclaim IV can survive a motion to dismiss because the existence of a valid contract is in doubt. *See* PHI Opp'n at 14.

---

[7] The Court does not reach the question of whether PHI has pled its fraud counterclaim with particularity pursuant to Fed. R. Civ. P. 9(b) because the counterclaim is dismissed as a matter of law.

Just as with PHI's fraud counterclaim, the Court finds that PHI's unjust enrichment counterclaim is analyzed under Delaware law pursuant to § 9.08 of the Equity Purchase Agreement because the unjust enrichment claim relates to or arises out of the Equity Purchase Agreement. *See CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, No. CV 06C-01-236 JRS, 2008 WL 2586694, at *5 (Del. Super. Ct. June 6, 2008) (finding that an action for "unjust enrichment 'arises out of or relates' to the [agreement]" because "[t]he [choice of law] provision contains a broad reference to *any* action that 'arises out of or relates to' the lease, thereby deliberately expanding the coverage of this provision beyond actions for breach of contract to actions 'arising out of or relating to' the [agreement], including . . . any resulting unjust enrichment."); *see also Diesel Props S.R.L.*, 2008 WL 4833001, at *6, *10 (holding that the "unjust enrichment [claims] are also subject to the forum selection clause[]" which covers "[a]ny dispute that may arise or should be associated with this Agreement.").

Unjust enrichment is a quasi-contract theory that may provide an aggrieved party a remedy in the absence of a formal contract. *See Akzo Nobel Coatings Inc. v. The Dow Chem. Co.*, No. CV 8666, 2015 WL 3536151, at *11 (Del. Ch. June 5, 2015). However, a "claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim." *Id.* (quoting *Kuroda*, 971 A.2d at 891). The Court has already found separately herein that PHI has failed to allege that the existence of a valid contract is in doubt. Therefore, PHI's unjust enrichment claims must be dismissed.

The cases on which PHI relies to argue that the unjust enrichment claim should not be dismissed are of no help to PHI. For example, in *Ox v. Union Cent. Life Ins. Co.*, the Court found that the unjust enrichment claim could survive because there was a "factual issue" as to the existence of a valid contract. No. 94-CV-4754, 1995 WL 634991, at *6 (S.D.N.Y. Oct. 27,

1995). Similarly, in *Lefkowitz v. Reissman* the Court held that it may be appropriate to permit contract claims and tort claims to proceed past the pleading stage "when either party has raised a question about whether the contract governing the dispute was valid and enforceable." No. 12-CV-8703, 2014 WL 925410, at *12 (S.D.N.Y. Mar. 7, 2014); *see also Skeans v. Key Com. Fin. LLC*, No. 18-CV-1516, 2019 WL 3804692, at *7 (D. Del. Aug. 13, 2019*), report and recommendation adopted in part, rejected in part*, No. 18-CV-1516, 2019 WL 4635100 (D. Del. Sept. 24, 2019) ("Because plaintiff has alleged that the contracts arose from wrongdoing, her unjust enrichment claim is not barred."); *Gate Techs., LLC v. Delphix Capital Markets, LLC*, No. 12-CV-7075, 2013 WL 3455484, at *5 (S.D.N.Y. July 9, 2013) ("Plaintiffs' unjust enrichment claims, though not permitted [if] an express agreement exists, are not precluded where the agreement may not be enforceable." (internal quotations omitted)). PHI's pleading does not raise a factual dispute regarding the existence of a valid contract. Therefore, this is not a case in which either party has properly raised a question about the existence of a valid contract. PHI cannot bring a quasi-contract claim for unjust enrichment because a valid contract exists. Accordingly, Counterclaim IV is dismissed.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to dismiss is GRANTED. All "crossclaims" ("Crossclaims" I–VI) against non-parties Reinbergen and R. Campbell are dismissed. Furthermore, Counterclaims II, III, and IV against Plaintiff are dismissed pursuant to Fed. R. Civ. P. 12(b)(6), leaving only Counterclaims I and VII against Plaintiff intact. Plaintiff is directed to file an answer to PHI's remaining counterclaims within 30 days of the date of this Order.

The Clerk is instructed to terminate the motion. (Doc. 58).

Dated: New York, New York
      June 12, 2020

**SO ORDERED.**

_____

Philip M. Halpern
United States District Judge