UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLE CAMPBELL, as Seller Representative,<br><br>Plaintiff,<br><br>-against-<br><br>PLANT HEALTH INTERMEDIATE, INC.,<br><br>Defendant. | **OPINION AND ORDER**<br><br>19-CV-03017 (PMH)<br><br>[rel. 20-CV-07249; 21-CV-07920] |

PHILIP M. HALPERN, United States District Judge:

The three related actions before this Court arise out of an equity purchase agreement dated October 19, 2018 (Doc. 150, "56.1", Ex. 1 (the "Agreement")) pursuant to which Plant Health Intermediate, Inc. ("PHI") purchased all of the capital stock of Growth Products Ltd. ("GP") and all of the membership interests in GP Solutions, LLC ("GPS"). The Agreement was executed by PHI as the Buyer and Nicole Campbell, as Seller Representative ("Nicole" or "Seller Representative"), Rupert Campbell ("Rupert"), Clare Reinbergen ("Reinbergen"), and Randy Oberlander as Sellers. Douglas Products and Packaging Company LLC ("Douglas") signed the Agreement as a guarantor to PHI. As discussed in detail *infra*, under the Agreement, the purchase price was subject to certain adjustments after closing—namely, two post-closing earn-out payments. The gravamen of the three separately filed lawsuits concerns the parties' disagreement as to determination of the earn-out payments under the procedure set forth in the Agreement and the ensuing payment obligations. The balance of the actions involve various other alleged breaches of contract. The Court assumes the parties' familiarity with the relevant facts as already set forth in the Court's June 12, 2020 Opinion and Order (Doc. 67) and the Court's February 4, 2022 Opinion and Order (Doc. 111), as well as the procedural history of the case, and provides the following overview of the surviving claims in each related action.

Nicole, as Seller Representative, initiated the first action against PHI on April 4, 2019 (*Campbell v. Plant Health Intermediate, Inc.*, 19-CV-03017 (the "Nicole's First Action")). (Doc. 1). Nicole maintains claims for breach of the Agreement based on PHI's failure to make the First Earn-out Payment and for related attorney's fees. PHI has two counterclaims which relate to various breaches of the Agreement on grounds unrelated to earn-out payments; and for attorney's fees. (Doc. 67).

PHI initiated a separate lawsuit against Rupert and Reinbergen on September 4, 2020. (*Plant Health Intermediate, Inc. v. Campbell, et al.,* 20-CV-07249 ("PHI Action")). On January 13, 2021, the Court *sua sponte* consolidated the PHI Action into Nicole's First Action for all purposes pursuant to Federal Rule of Civil Procedure 42(a)(2) (together, the "Consolidated Action"). (Doc. 76). Thereafter, four of PHI's five claims for relief survived the motion to dismiss stage. (Doc. 111). Specifically, PHI maintains claims for breach of the Agreement on grounds unrelated to earn-out payments (which are similar, if not identical, to the surviving counterclaims in Nicole's First Action). Likewise, PHI maintains claims against Rupert for money had and unjust enrichment related to rent disputes. Rupert and Reinbergen's counterclaims alleging breach of the Agreement based on the First and Second Earn-out payments also survived the motion to dismiss stage.

Finally, Nicole, as seller representative, initiated a separate action against Douglas and PHI on September 22, 2021. (*Campbell v. Douglas Products and Packaging Company LLC*, *et al.*, No. 21-CV-07920 ("Nicole's Second Action")). Specifically, Nicole claims that Douglas breached its guarantee obligations as to the First and Second Earn-out Payments, that PHI breached its payment obligation as to the Second Earn-out Payment, and asserts related claims for attorney's fees. PHI and Douglas also assert counterclaim for attorney's fees. On January 7, 2022, the Court

consolidated Nicole's Second Action into the Consolidated Action for discovery purposes *only*. (Doc. 117 at 15-17, 23). All claims for relief in Nicole's Second Action proceeded in discovery.

On October 19, 2022, the Court granted PHI and Douglas (together, "Defendants") permission to file a single, consolidated brief in support of their motion for summary judgment. (Doc. 144). The Court also granted Nicole permission to file a brief in support of her cross-motion for summary judgment. (*Id*.). On November 21, 2022, in accordance with the briefing schedule set by the Court, Defendants served their consolidated motion for summary judgment. (Doc. 147; Doc. 148, "Def. Br."; Doc. 149; Doc. 150; Doc. 151). Nicole served a single brief opposing Defendants' motion and cross-moving for summary judgment on January 31, 2023. (Doc. 152; Doc. 153, "Pl. Br."; Doc. 154; Doc. 155; Doc. 157). On March 6, 2023, Defendants served their consolidated reply brief in support of their motion and in opposition to Nicole's cross-motion. (Doc. 156, "Def. Reply"; Doc. 158). Nicole, with permission of the Court, filed her reply brief in support of her cross-motion on March 23, 2023 (Doc. 162, "Pl. Reply").

Nicole's Notice of Motion makes clear that she seeks summary judgment as to the: (i) First Claim for Relief in Nicole's First Action for breach of contract against PHI; and (ii) First Claim for Relief in the Nicole's Second Action regarding breach of contract based on the guarantee against Douglas. (Doc. 152).

Defendants, at the direction of the Court, filed an Amended Notice of Motion on March 5, 2024, specifying that the following claims for relief as the subject of their motion for summary judgment: (i) First Claim for Relief in  Nicole's First Action for breach of contract against PHI; (ii) Second Claim for Relief in Nicole's First Action for attorney's fees against PHI; (iii) First Counterclaim in the PHI Action for breach of contract against PHI; (iv) First Claim for Relief in Nicole's Second Action for breach of contract against Douglas; (v) Second Claim for Relief in

Nicole's Second Action for breach of contract against Douglas; and (vi) Third Claim for Relief in Nicole's Second Action for attorney's fees against Douglas.

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part and Nicole's cross-motion is DENIED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motions for summary judgment and draws them from the pleadings, the parties' amended joint Rule 56.1 Statement and the exhibits annexed thereto, and and the admissible evidence proffered by the parties. Unless otherwise indicated, the following facts are undisputed.

### I.   The Agreement

Pursuant to the Agreement, PHI became the sole owner of the equity in GP and GPS on October 19, 2018. (56.1 JF ¶¶ 1-2).[1] Wes Long ("Long") signed the Agreement as the President of PHI and the Chief Executive Officer of Douglas. (56.1 SF ¶ 3). The Agreement is governed by Delaware Law. (Agreement §9.08).  The parties agreed that "the Agreement and the other Transaction Documents" constituted the sole and entire agreement of the parties. (*Id*. § 9.05.) The parties further agreed that the "Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving." (*Id*. § 9.07).

---

[1] With respect to the parties' Rule 56.1 Statement (Doc. 150), the Court notes that the parties set forth their fifteen-paragraph "Joint Statement of Undisputed Material Facts," then Nicole set forth her twenty-three-paragraph "Additional Facts" beginning at number one, and then Defendants set forth their "Additional Facts" beginning again at number one. The Court hereafter refers to the first section of the document as "56.1 JF" (Doc. 150 at 1-3), the second section as "56.1 SF" (*id*. at 3-11), and the third section as "56.1 DF" (*id*. at 11-29).

The Agreement includes indemnification provisions for both Buyer (*id*. § 8.01(b)) and Sellers (*id*. § 8.02(b)), which cover, *inter alia*, "any and all Losses incurred or sustained . . . by reason of any breach . . . ."[2] The Agreement further provides:

> **Section 8.13 Sole Remedy**. The Parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this ARTICLE VIII. In furtherance of the foregoing, each Party hereby waives, to the fullest extent permitted under Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other Party hereto and its Affiliates and its and their respective Representatives arising under or based upon any applicable laws, except pursuant to the indemnification provisions set forth in this ARTICLE VIII. Notwithstanding the foregoing, this Section 8.13 shall not limit any Party's right to seek and obtain any equitable relief to which such Party shall be entitled or to seek any remedy related to fraud.

*Id*. § 8.13.

Moreover, with the exception of § 6.02(c) of the Agreement which entitles Buyer to specific performance concerning non-competition/non-solicitation (*id*. § 6.02) and the right of the parties "to seek and obtain any equitable relief to which [a] party shall be entitled to" (*id*. § 8.13":),[3] the Agreement is silent as to the consequences of either party failing to comply with, *inter alia*, the following obligations: (i) Buyer to prepare and deliver Earn-out Calculation Statement "on or

---

[2] While "Losses" is defined to include ". . . Actions, . . . the costs of investigation and defense and reasonable attorneys' fees and, as related to cleanup, containment and remediation, and the <u>costs of enforcing any right to indemnification under this Agreement</u>" (Agreement Ex. A, Definitions at A-5) (emphasis added), the indemnification is for losses from any breaches of the Agreement. "Action" means "any claim, action, cause of action demand, lawsuit, . . . litigation . . . ." (*Id*. at A-1).

[3] Remarkably, no party has sought amongst the sea of claims, counterclaims, and cross claims in the three related actions, equitable relief about any of the failures alleged to have occurred concerning the earn-out calculations and process.

before the date which is 60 days after the last day of each Calculation Period" (Agreement §
1.04(c)(i)); (ii) Buyer to provide Sellers with "reasonable access" to its books and records during
the Earn-out Review Period (*id*. § 1.04(c)(ii)); (iii) the parties to "negotiate in good faith to resolve
the disputed items" in an Earn-out Calculation Objection Notice; and (iv) if unresolved after 30
days, to "promptly" refer the disputed items to an Independent Accountant (*id*.).

II.     Earn-out Payment Procedure

        The Agreement provides for PHI, as Buyer, to make two post-closing earn-out payments,
to be determined based on three calculation periods. (56.1 JF ¶¶ 7, 13; Agreement § l.04). Section
1.04(c) sets forth the parties' agreement for procedures applicable to the determination of any
Earn-out Payments. (56.1 JF ¶ 6). The Agreement provides in pertinent part, as follows:

> (c)  Procedures Applicable to Determination of the Earn-out
> Payments.
> (i) On or before the date which is 60 days after the last day of each
> Calculation Period (or 90 days in the case of the final Calculation
> Period) (each such date, an "Earn-out Calculation Delivery Date"),
> Buyer shall prepare and deliver to Seller Representative a written
> statement (in each case, an "Earn-out Calculation Statement")
> setting forth in reasonable detail its determination of Actual Gross
> Margin Percentage and/or Contribution Margin for the applicable
> Calculation Period and its calculation of the resulting Earn-out
> Payment (in each case, an "Earn-out Calculation") . . . .
>
> (ii) Seller Representative shall have 45 days after receipt of the
> Earnout Calculation Statement for each Calculation Period (in each
> case, the "Earn- Out Review Period") to review the Earn-out
> Calculation Statement and the Earnout Calculation set forth therein
> . . . Prior to the expiration of the Earn-Out Review Period, Seller
> Representative may object to the Earn-out Calculation set forth in
> the Earn-out Calculation Statement for the applicable Calculation
> Period by delivering a written notice of objection (an "Earn-out
> Calculation Objection Notice") to Buyer . . . If Seller Representative
> fails to deliver an Earn-out Calculation Objection Notice to Buyer
> prior to the expiration of the Earn-Out Review Period, then the Earn-
> out Calculation set forth in the Earn-out Calculation Statement shall
> be final and binding on the parties hereto. If Seller Representative
> timely delivers an Earnout Calculation Objection Notice, Buyer and

> Seller Representative shall negotiate in good faith to resolve the disputed items and agree upon the Earn-out Payment for the applicable Calculation Period. If Buyer and Seller Representative are unable to reach agreement within 30 days after such an Earn-out Calculation Objection Notice has been given, all unresolved disputed items shall be promptly referred to the Independent Accountant . . . The resolution of the dispute and the calculation of the applicable Earn-out Calculation Objection Notice by the Independent Accountant shall be final and binding on the parties hereto . . . .

Agreement §1.04(c).

Further, Section 1.04(e) of the Agreement sets forth the parties' understanding as to the timing of any payment of the Earn-out Payments. (56.1 JF ¶ 8). The Agreement states in pertinent part, as follows:

> (e) <u>Timing of Payment of Earn-out Payments</u>. Subject to Section 1.04(g) any Earn-out Payment that Buyer is required to pay pursuant to Section 1.04(a) hereof shall be paid in full no later than 5 Business Days following the date upon which the determination of the Earn-Out Payment for the applicable Calculation Period becomes final and binding upon the parties as provided in Section 1.04(b)(ii)(including any final resolution of any dispute raised by Seller Representative in an Earn-out Calculation Objection Notice). . . .

Agreement §1.04(e).

Finally, the Agreement provides that Douglas is a guarantor to PHI's payment obligation. (*Id*. §8.15). "In the event that Buyer does not perform its payment obligations to the Sellers under this Agreement, Sellers, through the Seller Representative, shall have the right to seek performance directly from Douglas Products pursuant to this guarantee." (*Id*.).

III.   <u>First Earn-out Payment</u>

Section 1.04(a) of the Agreement sets forth the parties' understanding as to the elements and computation of a "First Earn-out Payment" for the "First Calculation Period"—defined in the

Agreement as January 1, 2018, through December 31, 2018. (56.1 JF ¶ 3; Agreement Ex. A, Definitions).

William Brenner ("Brenner") was an accountant for GP and GPS prior to PHI's acquisition of GP and GPS through the Agreement. (56.1 JF ¶¶ 14-15). Following the close of the Agreement, it is undisputed that Long asked Brenner to close the books for GP and GPS and perform some other financial analysis (the specifics of which are disputed). (56.1 SF ¶¶5-6, DF ¶ 34). On February 4, 2019, Brenner emailed his work product to Long, Nicole, and Aaron Carriker, which included, *inter alia*, a calculated First Earn-out Payment of $3,899,017.44 (the "February 4 Earn-out Calculation"). (56.1 Ex. 8 at 4). Brenner was compensated by GP for his post-closing work. (56.1 SF ¶ 14).

On March 25, 2019, Long sent Nicole, Reinbergen, Scott Mautner, John Power, and Randy Oberlander an email with the subject line "GP First Earn Out Calculation Statement" and an attachment identified as the "Earn Out Calculation Statement" related to the first earn out. (56.1 Ex. 27). This statement calculated a First Earn-out Payment of $1,226,156.71. (*Id.*). Nicole delivered a dispute notice with respect to this calculation statement on May 1, 2019. (56.1 DF ¶ 4, Ex. 23). The parties' dispute over this First Earn-out Payment was not submitted to an Independent Accountant, nor has it been resolved. (56.1 DF ¶¶ 11-13, Ex. 5 "Nicole Dep." at 345:7-11). Additionally, there is no evidence in the record that PHI or Douglas has made any payment that they purport to be a First Earn-out Payment.

IV.    Second Earn-out Payment

Section 1.04(b) of the Agreement sets forth the parties' understanding as to the elements and computation of a "Second Earn-out Payment" for the "Second Calculation Period" and "Third Calculation Period"—defined in the Agreement as January 1, 2019, through December 31, 2019,

and January 1, 2020, through December 31, 2020, respectively. (56.1 JF ¶ 5; Agreement Ex. A, Definitions). The Second Earn-out Payment is the sum of the 2019 Earn-out Payment and the 2020 Earn-out Payment. (Agreement §1.04(b)).

On March 18, 2020, John Power emailed Fred D. Weinstein an attachment titled "Growth Products Second Earn Out Payment 2019" which he identified as "PHI's earn out calculation for 2019." (56.1 Ex. 33). Nicole delivered a dispute notice with respect to this statement on April 23, 2020. (56.1 DF ¶ 6, Ex. 34). Sometime between March 4 and 31, 2021, PHI provided Nicole with its 2020 Earn-out Calculation Statement. (56.1 DF ¶¶ 7-8, Ex. 37). Nicole delivered a dispute notice with respect to PHI's 2020 Earn-out Calculation Statement on May 14, 2021. (56.1 DF ¶ 9). The parties' disputes regarding the Second Earn-out Payment were not submitted to an Independent Accountant, nor have they been resolved. (*Id.* ¶¶ 15-17). Finally, there is no evidence in the record that PHI or Douglas has made any payment that they purport to be a Second Earn-out Payment.

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Medical Center*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## <u>ANALYSIS</u>

All parties in the three related actions claim breach of the Agreement. The Court notes at the outset of this analysis that the parties agreed, *inter alia*, that: (i) the Agreement is the entire

agreement between the parties (Agreement § 9.05); (ii) Delaware law applies (*id*. § 9.08); (iii) any amendment, modification, supplementation, or waiver to the Agreement must be in writing (*id*. § 9.07); (iv) Article VIII provides the sole and exclusive remedy with respect to any claims for breach, except where the parties seek equitable relief or any remedy related to fraud (*id*. § 8.13); and (v) the parties indemnify each other for any breach of the Agreement (*id*. §§ 8.01(b) and 8.02(b)).

The Court turns first to Nicole's cross-motion which pertains solely to the First Earn-out Payment and Douglas's guarantee thereof.

I.    <u>Nicole Cross-Motion for Summary Judgment</u>

Nicole asks the Court to grant summary judgment and award damages with respect to the First Claim for Relief in Nicole's First Action. That claim asserts that PHI breached the Agreement by failing to make the First Earn-out Payment, as well as for the failure of the guarantor to make the same payment as set forth in the First Claim for Relief in Nicole's Second Action. Nicole argues with respect to both claims that the February 4 Earn-out Calculation became final and binding as the First Earn-out Payment on March 22, 2019, and that Defendants breached the Agreement by failing to make the First Earn-out Payment within five business days thereof. (Pl. Reply at 5-6). Defendants contend that the February 4 Earn-out Calculation never became final and binding as the First Earn-out Payment and, therefore, did not create a payment obligation under the Agreement for Defendants to have breached. (Def. Br. at 15-16). The Court agrees with Defendants.

The Agreement plainly requires, as the first step of the Earn-out Payment procedure, that "*Buyer* shall prepare and deliver to Seller Representative" the First Earn-out Calculation. (Agreement §1.04(c)(i)) (emphasis added). The question, therefore, is whether Brenner prepared

and delivered the February 4 Earn-out Calculation on behalf of PHI. The record is clear that it was not.

During negotiation of the Agreement, the parties had discussed the idea of using Brenner (the former accountant for GP and GPS) for future calculations. (56.1 Ex. 3 "Long Dep." 42:19-43:10). After closing the Agreement, Long asked Brenner to gather certain information related to the earn-out calculation. (56.1 SR ¶ 6, Ex. 2 "Brenner Dep." at 80:15-22). Brenner calculated, *inter alia*, the actual gross margin percentage for 2018 and the December 2017 TTM cost of goods sold, and emailed the information to Long, Nicole, and Aaron Carriker on February 4, 2019 with the subject line "2018 gross margin calculation" and an attachment titled "Growth Products 2018 Margin Analysis." (56.1 Ex. 8; 56.1 SF ¶¶ 9, 11). Brenner's work product included an earn-out calculation amounting to $3,899,017.44. (*Id*. Ex. 8 at 4). However, Brenner testified that Long did *not* ask him to calculate earn-out. (Brenner Dep. at 47:10-18, 109:23-110:7, 114:3-7, 125:20-126:1, 135:1-3, 301:5-6; Long Dep. at 278:6-9; 56.1 Ex. 6). Rather, Brenner explained that the earn-out calculation took him "about two minutes" and that he "simply added that [earn-out calculation] section toward the bottom, as to me an obvious next step as to where would this all lead and what would this translate into and that amount, **but I was not asked to actually put that on**." (Brenner Dep. at 125:22-126:1) (emphasis added). Brenner testified that the 2018 actual margin calculation was "the initial compilation of the data that would be used for the [First] earnout" and confirmed that he did not intend for the numbers he provided on February 4 to be final. (*Id*. at 134:16-18, 274:24-275:5).

Moreover, the record evidence indicates that Nicole understood that the February 4 Earn-out Calculation was not being delivered on behalf of PHI pursuant to the agreed-upon procedure. First, Brenner sent multiple versions of his work product (including the February 4 Earn-out

Calculation) to Nicole before providing it to Long. (56.1 DF ¶ 36, Exs. 50-52). Brenner stated in one such email: "[l]et me know if you, Rupert, Clare and Randy are good with this version and then I will send to [Long] for his review." (56.1 DF ¶ 37, Ex. 52). Also, later communications involving Long, Nicole, and Brenner indicate that they understood that calculation of the First Earn-out Payment was ongoing. (56.1 Exs. 17, 56, 57). For instance, Brenner sent additional work product to Long on February 16, 2019 concerning the 2018 and 2017 margin, after which Nicole thanked Brenner and Long for "putting all of this analysis together" and asked to "[p]lease let me know the timeline going forward." (56.1 Ex. 17). Additionally, Long wrote in his March 4, 2019 email to Nicole that "we decided that we need to make sure to get the year end numbers right before we can finalize this." (56.1 Ex. 7). Accordingly, the Court finds that Brenner's February 4 email does not constitute PHI's delivery of the First Earn-out Calculation which triggers the "Earn-Out Review Period" under the terms of the Agreement. (Agreement §1.04(c)). The February 4 Earn-out Calculation thus never became final and binding, and did not create any payment obligation. And because there is no payment obligation to PHI, there is no payment obligation to Douglas as guarantor.

Nicole alternatively argues that the February 4 Earn-out Calculation should be given effect as the only timely calculation presented within the contractual 60-day period to "afford Plaintiffs the benefit of their bargain." (Pl. Br. at 14). But Defendants point out, and Nicole acknowledges, that the Agreement imposes no consequence for failing to provide a timely earn-out calculation statement, nor does it contain a "time is of the essence" clause. (Def. Br. at 20; Pl. Br. at 17). Accordingly, the Court will not create a consequence that was not agreed-upon by the parties by binding PHI to an earn-out calculation, which it did not prepare nor deliver, simply on the basis

that it was "timely."[5] The Court is not in the business of re-writing agreements that the parties now find incomplete on a variety of issues.

Nicole's cross-motion for summary judgment as to the breach of contract claims regarding PHI's failure to pay the First Earn-out Payment and Douglas' guarantee thereof is, therefore, DENIED.

II.     Defendants' Motion for Summary Judgment

PHI moves for summary judgment dismissing the breach of contract and attorney's fees claims asserted in Nicole's First Action; and for summary judgment on the counterclaims asserted by Rupert and Reinbergen (together with Nicole, "Sellers") in the PHI Action. Douglas seeks summary judgment on all three claims for relief set forth in Nicole's Second Action. These breach of contract claims—which were needlessly spread out among the three related lawsuits as both claims and counterclaims—and which largely overlap in allegations—are based on either: (i) Defendants' failure to pay the First and Second Earn-out Payments; or (ii) Defendants' failure to abide by agreed-upon Earn-out Calculation procedures. PHI and Douglas also seek attorney's fees in connection with this litigation under Section 8.02 of the Agreement.

A.  Breach Based on Failure to Pay

The Court turns first to the claims and counterclaims of breach based on failure to pay. Under Delaware law, a breach of contract claim requires: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840

---

[5] Nicole cites multiple cases for the proposition that "an untimely submission cannot form the basis of the First Earn-out Calculation." (Pl. Br. at 19). But that is not the issue here. The issue is whether the February 4 Earn-out Calculation triggered the Earn-Out Review Period under §1.04(c) of the Agreement. The Court found it did not because the earn-out calculation was not prepared nor delivered by PHI.

A.2d 606, 612 (Del. 2003). Here, PHI argues that no payment obligations exist under the Agreement because no Independent Accountant has resolved the disputed items between the parties, and the amount due has not been determined nor become final and binding under the Agreement. (*Id*. at 14-15, 24). The Court agrees.

As a threshold matter, the parties agreed to the following procedure for determination of Earn-out Payments: (i) Buyer shall prepare and deliver to Seller its Earn-out Calculation Statement 60 days after the last day of the Calculation Period; (ii) Seller has 45 days after receipt of the Earn-out Calculation Statement to deliver to Buyer an Earn-out Calculation Objection Notice; (iii) if Seller timely objects,[6] the parties shall negotiate in good faith to resolve the disputed items; (iv) if the parties are unable to reach agreement within 30 days, "all unresolved disputed items shall be promptly referred to the Independent Accountant"; (v) the Independent Accountant shall resolve the disputed items; and (vi) the resolution of the dispute and ultimate Earn-out Calculation become final and binding on the parties. (Agreement §1.04(c)). Moreover, PHI's payment obligation arises five days after "the date upon which the determination of the Earn-Out Payment . . . becomes final and binding upon the parties as provided in Section 1.04(b)(ii) (including any final resolution of any dispute raised by Seller Representative in an Earn-out Calculation Objection Notice)." (*Id*. §1.04(e)). There is no assertion by either party that this procedure was waived or modified in writing, pursuant to § 9.07 of the Agreement. Accordingly, the parties are bound by this procedure.

Pursuant to the Agreement, the deadline for PHI to deliver the First Earn-out Calculation Statement was March 1, 2019. (56.1 SF ¶ 8). The Court has already determined that the February 4 Earn-out Calculation was not delivered by PHI and, therefore, never become final and binding.

---

[6] But if Seller does not object within 45 days, the Earn-out Calculation Statement becomes final and finding on the parties. (Agreement §1.04(c)).

PHI did, however, deliver a First Earn-out Calculation Statement on March 25, 2019 ("March 25 Earn-out Calculation"). (56.1 DF ¶ 4, 56.1 Ex. 23). The Court notes that the Agreement does not provide any legal consequence for late delivery of an Earn-out Calculation Statement, and declines to impose one here.[7] Nicole objected to the March 25 Earn-out Calculation on May 1, 2019, which was within the 45-day window. (56.1 DF ¶ 4, Ex. 23). While the parties do not address in their briefing whether they negotiated in good faith to resolve the disputed items, the record shows that the parties did not submit the dispute to an Independent Accountant, nor have they resolved the disputed items. (56.1 DF ¶¶ 11-13, Ex. 5 "Nicole Dep." at 345:7-11). Therefore, under the procedure set forth in the Agreement, the March 25 Earn-out Calculation has not become final and binding. Accordingly, any claim or counterclaim based upon a failure to pay the First Earn-out Payment must be denied.

The Second Earn-out Payment is the sum of the 2019 Earn-out Payment and the 2020 Earn-out Payment. (Agreement §1.04(b)). Pursuant to the Agreement, the deadline for PHI to deliver the 2019 Earn-out Calculation Statement was February 29, 2020. PHI provided its 2019 Earn-out Calculation Statement on March 18, 2020. (56.1 Ex. 33). Nicole objected to the 2019 Earn-out Calculation Statement on April 23, 2020, which was within the 45-day window. (56.1 DF ¶ 6, Ex. 34). There is no evidence on the record that the parties negotiated to resolve the disputed items, nor that the disputes were submitted to an Independent Accountant or ever resolved.

---

[7] PHI argues that their objection to the timing of the First Earn-out Calculation is not within the Independent Accountant's scope of expertise but rather is a legal issue to be resolved by the Court. (Pl. Br. at 20-21). The Agreement defines "Independent Accountant" as "a nationally recognized firm of independent certified public accountants other than Sellers' accountants or Buyer's accountants who Seller Representative and Buyer shall agree upon . . . ." (Agreement §§ 1.03(c)(iii)). While it is true that the Agreement expressly limits the Independent Accountant to "act[] as expert[] and not arbitrator[]" in § 1.03 regarding Post-Closing adjustments disputes, this limitation is not present in §1.04 of the Agreement regarding earn-out calculation disputes. (Agreement §§ 1.03(c)(iii), 1.04(c)(ii)). The Court will not read-in such a limitation especially where, as here, the pertinent section specifies that "all unresolved disputed items" shall be submitted to an Independent Accountant. (*Id.*).

Further, under the Agreement, the deadline for PHI to deliver the 2020 Earn-out Calculation Statement was March 1, 2021. PHI provided a 2020 Earn-out Calculation Statement to Sellers dated March 4, 2021, but which may have been delivered on March 31, 2021. (56.1 DF ¶¶ 7-8, Exs. 37-38). Nicole objected to the 2020 Earn-out Calculation Statement on May 14, 2021. (56.1 DF ¶ 9). There is no evidence in the record that the disputed items regarding the Second Earn-out Payment were negotiated in good faith, submitted to an Independent Accountant, or ever resolved. (*Id.* ¶¶ 15-17). Any counterclaim raised by Rupert or Reinbergen for breach of contract for failure to pay the Second Earn-out Payment must be denied.

Under the plain terms of the Agreement, the First and Second Earn-out Calculations did not become final and binding, and there is no payment obligation on which to claim breach of contract for failure to pay. Further, because there is no payment obligation to PHI, there is no payment obligation on behalf of Douglas (the guarantor). Accordingly, PHI's motion for summary judgment seeking dismissal of the breach of contract claims in Nicole's First Action and the counterclaims in the PHI Action based on its alleged failure to pay the First and Second Earn-out Payment is GRANTED. Likewise, Douglas's motion to dismiss the claims in Nicole's Second Action for failure to pay the two earn-out payments based upon the guarantee obligation is GRANTED.[8]

### B. Failure to Follow Earn-Out Procedure

The Court turns next to the parties' claims that each side breached the Agreement by failing to follow procedures under the Agreement. Specifically, Rupert and Reinbergen assert in the First Counterclaim of the PHI Action that PHI breached the Agreement by: (i) "fail[ing] to provide

---

[8] While Douglas moved for summary judgment on the Second Claim for Relief in Nicole's Second Action, PHI did not move and this claim remains intact against PHI. (Doc. 164).

Nicole, as Seller Representative, with access to all relevant books and records pertaining to the Earn-out Calculation Statement for 2019"; (ii) "fail[ing] to provide all relevant books and records pertaining to the Earn-out Calculation Statement for 2020"; and (iii) "fail[ing] and refus[ing] to follow contractually mandated procedures for the resolution of objections made by Nicole, as Seller Representative, to the Earn-out Calculation Statement for 2019 and the Earn-out Calculation Statement for 2020". (PHI Action, Doc. 25 ¶¶ 165, 169, 170, 174). Nicole asserts identical allegations against PHI in the Second Claim for Relief of Nicole's Second Action. (Nicole's Second Action, Doc. 32 ¶¶ 42, 44).

With respect to access to books and records, the Agreement provides that "[d]uring the Earn-Out Review Period, Seller Representative and Sellers' accountants shall have reasonable access to and the right to inspect Buyer's books and records during normal business hours at Buyer's offices, upon reasonable prior notice and solely for purposes reasonably related to the determinations of Actual Gross Margin Percentage and/or Contribution Margin for the applicable Calculation Period and the resulting Earnout Payment." (Agreement §1.04(c)(ii)). The evidentiary record on this issue is sparse. The parties do not cite any testimony, affidavit, or facts in the amended Rule 56.1 Statement that shed light on whether PHI permitted any of the sellers the requisite access to its books and records following delivery of the 2019 and 2020 Earn-out Calculation Statements.[9] The only document identified in Sellers' briefing (and which the Court is able to locate in the record) to support their argument that PHI "failed to allow review of all relevant books and records" is Nicole's dispute notice for the 2019 Earn-out Calculation, in which

---

[9] The only reference to this issue in the amended Rule 56.1 Statement is a single sentence wherein Sellers state: "[f]urther disputed that the Second Earn-out Payment was subject to the determination of an Independent Accountant because PHI never allowed [Seller Representative] the contractually required opportunity to conduct a review of all the relevant books and records and to do so over the requisite period allowed under the Agreement." (56.1 DF ¶ 14).

she accuses PHI of failing to provide access to books and records. (Pl. Br. at 12-13, 26; 56.1 Ex. 34). Of course, in a later communication, PHI argues to Nicole that it did provide the requisite access to books and records in connection with the 2019 Earn-out Calculation. (56.1 Ex. 37). The Court simply cannot, on this record, ascertain whether PHI breached its obligation under the Agreement to provide "reasonable access" to books and records in connection with the Second Earn-out Calculation. (Agreement §1.04(c)(ii)).

The same is true for Sellers' claims of breach based on PHI's alleged failure to follow contractually mandated procedures for the resolution of objections to the Second Earn-out Payment. There is no dispute that the agreed-upon procedure for resolution of objections was to negotiate in good faith and, if there was no agreement after 30 days, "all unresolved disputed items shall be promptly referred to the Independent Accountant." (Agreement §1.04(c)). The record does not reflect any evidence of a good faith negotiation and it is undisputed that the parties have not reached agreement on the disputed items. Moreover, each party blames the other for the fact that the disputed items were not referred to an Independent Accountant. (Pl. Br. at 26 ("PHI . . . did not seek 'prompt' referral of the matter to an [Independent Accountant], although [Seller Representative's] accountant was willing to confer at that time with PHI's accountants on the selection of an [Independent Accountant]); Def. Reply at 26 ( "[Sellers'] argument requires the Court to ignore [Seller Representative's] efforts to frustrate referral to an [Independent Accountant]")). But neither party provides evidence that they made efforts to bring the disputed items to an Independent Accountant, nor that the other party hindered those efforts. Accordingly,

the Court cannot on this record make a determination as to Sellers' claims for breach based on failure to follow the agreed-upon procedure for resolving objections.[10]

In any event, the Agreement does not provide any consequence for PHI failing to provide "reasonable access" to books and records or for the parties failing to "promptly" refer disputed items to an Independent Accountant. (Agreement §1.04(c)). The Court will not independently impose such consequences here. Indeed, the parties are free to engage the processes that the Agreement contemplates again and now. Likewise, they are free to commence an action for equitable relief to ensure that the contractual and bargained for processes are followed. To the extent that any claim and/or counterclaim includes a claim based upon the failure to follow earn-out procedures, those motions are denied.

III.    Attorney's Fees

Finally, the Court turns to Defendants' motion for summary judgment as to Sellers' claims for attorney's fees in Nicole's First and Second Action. Specifically, Defendants move as follows: (i) PHI seeks summary judgement on the Second Claim for Relief in Nicole's First Action for attorney's fees; and (ii) Douglas seeks summary judgement on the Third Claim for Relief in Nicole's Second Action for attorney's fees. At least PHI (as opposed to Douglas) is indemnified at this juncture for "any and all Losses" caused by the sellers by reason of "any breach or non-

---

[10] At the January 6, 2022 conference, the Court denied PHI's request for an order directing Plaintiff to Alternative Dispute Resolution with an Independent Accountant because PHI had not sought that relief in its pleadings. (Doc. 107; Doc. 117 at 22:10-13). The summary judgment rulings do not change this stark reality. The parties continue to press breach of contract claims for failure to make earn-out payments, for failure to follow the procedures they agreed to, and for other breaches of the Agreement. While the other breaches may be adjudicated one way or the other, the earn-out payment claims (except against PHI in Nicole's Second Action) are being dismissed as no payment obligation currently exists. The other claims and counterclaims to the extent they remain intact may (or may not) result in the payment of legal fees and compensatory damages therefor but cannot result in any relief concerning the First and Second Earn-out Payments. A separate action will be required for that result.

fulfillment of any covenant, agreement, or obligation to be performed by" the other party. (Agreement § 8.01(b)).

As discussed *supra*, the Court dismisses the claim for breach of contract in Nicole's First Action and the related guarantee claims in the First Claim for Relief in Nicole's Second Action. That result may necessitate the payment of attorney's fees at a later date.[11]

With respect to the claims for breach of contract in Nicole's Second Action, the only surviving claims are the Third Claim for Relief for attorney's fees and the Second Claim for Relief for breach of contract to the extent it claims breach based on PHI's failure to pay the Second Earn-out Payment, failure to provide access to books and records, or failure to follow contractually mandated procedures for the resolution of objections. With respect to the PHI Action, the Complaint remains intact and the counterclaim likewise remains intact to the extent it alleges PHI failed to follow the procedures and/or provide reasonable access to books and records. Therefore, it is possible attorney's fees may be available to Sellers and/or Buyers for those specific allegations should any of them hold up. The Court denied summary judgment as to those claims because the record was insufficient to determine a breach. It is unclear therefore whether Sellers are absolutely entitled to attorney's fees. Accordingly, the Court declines to rule on attorney's fees as a ruling would be premature at this juncture. Defendants' motion for summary judgment on claims for attorney's fees is, therefore, DENIED.

---

[11] The Court also dismisses the counterclaim in the PHI Action but only to the extent it seeks relief for non-payment of the First and Second Earn-out Payments.

## **CONCLUSION**

For the foregoing reasons, Nicole's cross-motion for summary judgment on the First Claim for Relief in Nicole's First and Second Action is DENIED and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

Defendants' motion is GRANTED as to the following claims for relief: (i) First Claim for Relief in Nicole's First Action for breach of contract; (ii) First Counterclaim in the PHI Action for breach of contract to the extent it is based on failure to pay the First and Second Earn-out Payments only; (iii) First Claim for Relief in Nicole's Second Action for breach of contract; and (iv) Second Claim for Relief in Nicole's Second Action for breach of contract but only to the extent it is based on Douglas's failure to pay the Second Earn-out Payment.[12] The balance of Defendants' motion is denied.

Defendants' motion is DENIED as to the following claim for relief: (i) First Counterclaim in the PHI Action for breach of contract to the extent it is based on failure to provide access to books and records and failure to follow procedure for resolving objections; (ii) Second Claim for Relief in Nicole's Second Action for breach of contract to the extent it is based on failure to provide access to books and records, PHI's failure to make the Second Earn-out Payment, and failure to follow procedure for resolving objections; and (iii) Second Claim for Relief in Nicole's First Action and Third Claim for Relief in Nicole's Second Action, each for attorney's fees.

The Court, pursuant to Federal Rule of Civil Procedure 42(a)(2), *sua sponte* consolidates the Nicole Second Action into the Consolidated Action for the purposes of trial. Unless otherwise ordered by this Court, future filings shall be filed and docketed only under docket number 19-CV-03017. The parties are directed to meet and confer and to prepare an Order and Stipulation

---

[12] *See* n.8, *supra*.

consolidating and simplifying the remaining claims for relief and defenses now extant. The Order and Stipulation shall be filed on or before **April 5, 2024**. The parties are directed to meet and confer and comply with Rules 6(A) and 6(B) of the Court's Individual Practices (rev. June 23, 2023) by filing the documents required therein, which include a joint pretrial order, proposed joint *voir dire* questions, joint requests to charge, joint verdict form, and any motion *in limine*, on or before **April 12, 2024**. Opposition to any motion *in limine* is due **April 26, 2024**.

A pre-trial conference has been scheduled for **June 17, 2024 at 12:00 p.m.** to be held in Courtroom 520 of the White Plains courthouse.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Docs. 147, 152, and 164, and to docket a copy of this Opinion and Order in 19-CV-03017, 20-CV-07249, and 21-CV-07920.

**SO ORDERED:**

Dated:    White Plains, New York
          March 11, 2024

_____
PHILIP M. HALPERN
United States District Judge

24